1
2
3
4
5
6                 **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9   Carlos Robles,                    )    No. CV-11-668-TUC-FRZ-DTF
                                       )
10              Petitioner,            )    **REPORT & RECOMMENDATION**
                                       )
11  vs.                                )
                                       )
12  Michael D. Garvy, et al.           )
                                       )
13              Respondents.           )
                                       )
14  _____  )

15

16          Petitioner Carlos Robles has filed a Petition for Writ of Habeas Corpus pursuant to

17  28 U.S.C. § 2254. In accordance with the Rules of Practice of the Court, this matter was

    referred to Magistrate Judge Ferraro for Report and Recommendation. Before this Court are
18
    the Amended Petition (Doc. 6) and Respondents' Answer (Doc. 13). The Magistrate Judge
19
    recommends that the District Court, after its independent review of the record, dismiss the
20
    petition.
21
                    **FACTUAL AND PROCEDURAL BACKGROUND**
22
            Petitioner was convicted of one count of first degree murder and one count of
23
    attempted first degree murder, and sentenced to natural life for the murder and a consecutive
24
    10.5-year sentence on the attempted murder charge. (Doc. 13, Ex. A at 2 n.1; Doc. 13, Ex.
25
    C.) The convictions were based on the January 1, 2005 murder of 16-year-old Santiago
26
    Alvarez and attempted murder of Juan Escalante. Petitioner's convictions and sentences were
27
    affirmed on appeal. (Doc. 13, Ex. A.) He filed a petition for post-conviction relief (PCR) (*id.*,
28

1   Ex. P), which was denied on the merits by the PCR court (*id.*, Ex. S) and the appellate court

2   (*id.*, Ex. U.)

3                                        **DISCUSSION**

4        Respondents do not dispute the timeliness of the petition and concede that the claims

5   are exhausted (Doc. 13 at 4); therefore, the Court assesses Petitioner's five claims on the

6   merits.

7               **LEGAL STANDARD FOR RELIEF UNDER THE AEDPA**

8        The Antiterrorism and Effective Death Penalty Act (AEDPA) established a

9   "substantially higher threshold for habeas relief" with the "acknowledged purpose of

10  'reducing delays in the execution of state and federal criminal sentences.'" *Schriro v.*

11  *Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206

12  (2003)). The AEDPA's "'highly deferential standard for evaluating state-court rulings' . . .

13  demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*,

14  537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7

15  (1997)).

16       Under the AEDPA, a petitioner is not entitled to habeas relief on any claim

17  "adjudicated on the merits" by the state court unless that adjudication:

18       (1) resulted in a decision that was contrary to, or involved an unreasonable
19       application of, clearly established Federal law, as determined by the Supreme
         Court of the United States; or

20       (2) resulted in a decision that was based on an unreasonable determination of
         the facts in light of the evidence presented in the State court proceeding.
21

22  28 U.S.C. § 2254(d). The relevant state court decision is the last reasoned state decision

23  regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v.*

24  *Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664

    (9th Cir. 2005).
25

26       "The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule

27  of law that was clearly established at the time his state-court conviction became final."

28                                          - 2 -

1    *Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Therefore, to assess a claim under subsection

2    (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs

3    the sufficiency of the claims on habeas review.  "Clearly established" federal law consists

4    of the holdings of the Supreme Court at the time the petitioner's state court conviction

5    became final.  *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

6          The Supreme Court has provided guidance in applying each prong of § 2254(d)(1).

7    The Court has explained that a state court decision is "contrary to" the Supreme Court's

8    clearly established precedents if the decision applies a rule that contradicts the governing law

9    set forth in those precedents, thereby reaching a conclusion opposite to that reached by the

10   Supreme Court on a matter of law, or if it confronts a set of facts that is materially

11   indistinguishable from a decision of the Supreme Court but reaches a different result.

12   *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).  In

13   characterizing the claims subject to analysis under the "contrary to" prong, the Court has

14   observed that "a run-of-the-mill state-court decision applying the correct legal rule to the

15   facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to'

16   clause."  *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir.

17   2004).

18         Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court

19   may grant relief where a state court "identifies the correct governing legal rule from [the

20   Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or

21   "unreasonably extends a legal principle from [Supreme Court] precedent to a new context

22   where it should not apply or unreasonably refuses to extend that principle to a new context

23   where it should apply."  *Williams*, 529 U.S. at 407.  For a federal court to find a state court's

24   application of Supreme Court precedent "unreasonable," the petitioner must show that the

25   state court's decision was not merely incorrect or erroneous, but "objectively unreasonable."

26   *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at 25.

27         Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state

28                                          - 3 -

1    court decision was based upon an unreasonable determination of the facts.  *Miller-El v.*
2    *Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*).  A state court decision "based on a factual
3    determination will not be overturned on factual grounds unless objectively unreasonable in
4    light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322, 340
5    (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). In considering
6    a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct,
7    and a petitioner bears the "burden of rebutting this presumption by clear and convincing
8    evidence."  28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S.
9    at 240.

10         **MERITS ANALYSIS**

11         Claims 1, 2 and 3 allege ineffective assistance of counsel at trial and sentencing. The
12    Court addresses them in chronological order, trial first and then sentencing. The Court then
13    addresses Claims 4 and 5.

14         **<u>Ineffective Assistance of Counsel Standard</u>**

15         Ineffective assistance of counsel (IAC) claims are governed by *Strickland v.*
16    *Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that
17    counsel's representation fell below an objective standard of reasonableness and that the
18    deficiency prejudiced the defense. *Id.* at 687-88.

19         The inquiry under *Strickland* is highly deferential, and "every effort [must] be made
20    to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's
21    challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*
22    at 689. Thus, to satisfy *Strickland*'s first prong, deficient performance, a defendant must
23    overcome "the presumption that, under the circumstances, the challenged action might be
24    considered sound trial strategy." *Id.*

25         Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court
26    "need not determine whether counsel's performance was deficient before examining the
27    prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if it

28                                                    - 4 -

is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**IAC at Trial, Claim 3**

Petitioner alleges that trial counsel was ineffective in that he (a) failed to have a biased juror struck; (b) failed to request a limiting instruction regarding Robles's teardrop tattoo; (c) did not argue, as an alternative defense, that the shooting was not premeditated; and (d) argued an erroneous definition of first degree murder. The PCR court and appellate court denied each of these claims on the merits.

Claim 3(a)

Petitioner argues counsel erred in failing to have juror Buckwalter removed from the jury because during voir dire the juror expressed that he would have a negative view if Robles did not testify. In response to defense counsel's question about a defendant's right not to testify, the following exchange took place:

> JUROR BUCKWALTER: I just feel if I did not do it I would be the first one up there to tell you that I didn't do it. And I would want to tell you my side of the story. And if they don't, then they are hiding something. And I would be telling everybody that I know. And even though I can tell you it wouldn't make any difference, down deep inside it would.

> MR. LOUGEE: The judge also told you, and this is what is operating in this case, is that the law, is that the defense lawyer's job is to advise the client as to whether or not his testimony is going to help him. Now the lawyer will make that decision based on many things. But assuming for the moment that Mr. Robles doesn't testify, and I tell you now that I will strongly recommend that he not testify, the decision really is mine. Would you understand that and not hold it against him?

> JUROR BUCKWALTER: No, I don't think I would based on everything I heard on that. But I think there would be a little part of me thinking he should have been up there.

> MR. LOUGEE: Let's assume for the moment that the defendant

- 5 -

couldn't add anything if it came to pass that the defense in this case was I didn't do it. I wasn't there. And my decision was that he would not assist in that defense by taking the stand. What would your position be?

JUROR BUCKWALTER: Even though it doesn't add anything, I think it would make me feel better if I heard him say it.

MR. LOUGEE: If all he could [sic] was I didn't do it, you would still want to hear that?

JUROR BUCKWALTER: Yes.

(RT 12/13/05 at 91-92.) Counsel did not request the Court to excuse juror Buckwalter nor was he struck during peremptories. The jury was instructed:

The State must prove guilt beyond a reasonable doubt with its own evidence. The defendant is not required to testify. The decision on whether or not to testify is left to the defendant, acting with the advice of an attorney. You must not let this choice affect your deliberations in any way.

(RT 12/20/05 at 7.)

The PCR court held that Robles failed to establish that juror Buckwalter had a negative view of his innocence or that the juror prejudiced his defense. (Doc. 13, Ex. S at 4.) The appellate court noted that the jurors were instructed that their deliberations could not be impacted by a defendant's decision of whether to testify, and the court presumes jurors follow the instructions. (Doc. 13, Ex. U at 5-6.) The court went on to affirm the PCR court's ultimate conclusion. (*Id.* at 6.)

As found by the state courts, Petitioner fails to establish that he was actually prejudiced by counsel's actions. Although juror Buckwalter expressed a desire to hear Robles testify, he agreed that he would not hold Robles's failure to testify against him. Further, courts presume that jurors listen to and endeavor to follow the court's instructions. *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985); *Weeks v. Angelone*, 538 U.S. 225, 234 (2000). The state courts did not unreasonably apply *Strickland* in deciding that there was not a reasonable probability the outcome would have been different if juror Buckwalter had been struck from the jury.

- 6 -

1

<u>Claim 3(b)</u>

Petitioner alleges he was prejudiced when counsel did not request a limiting instruction regarding his tattoo. Robles states that he has a teardrop tattoo. During voir dire a juror noticed it and assumed it meant Robles had killed someone. (RT 12/13/05 at 45-46.) The juror acknowledged that might effect his impartiality and he was excused for cause. (*Id.* at 46.) Petitioner argues it is likely that other jurors saw it and, without a limiting instruction, could have formed a negative impression of him.

The PCR court found that Robles presented no evidence that the tattoo negatively impacted the jurors' impressions of him, thus, there was no prejudice. (Doc. 13, Ex. S at 4.) The court of appeals held that matters of trial strategy are left to counsel, Robles's argument was entirely speculative, and Robles was not prejudiced. (*Id.*, Ex. U at 6-7.)

Petitioner presented no evidence that any jurors saw the tattoo or perceived anything negative about Petitioner if they did see it. A petitioner must affirmatively prove prejudice. *Strickland*, 466 U.S. at 693. Petitioner has failed to establish that, if there had been a limiting instruction about his tattoo, there is a reasonable probability he would not have been convicted.

<u>Claim 3(c)</u>

Petitioner argues that counsel should have made an alternative argument that the killing was not premeditated. Petitioner contends the victim was involved in a fight and there was a crowd of people around, thus, a jury could have found the killing was reckless but not premeditated. During PCR proceedings, the State submitted an affidavit of trial counsel, in which he averred, "the defense was third-party culpability and witness misidentification. This defense was chosen after evaluating all of the evidence, using all of my experience and training, and consulting with the defendant." (Doc. 19-1 at 2.) The PCR court found that counsel made a strategic decision to present a single defense and there is no evidence that strategy was unreasonable. (Doc. 13, Ex. S at 4.) The court of appeals affirmed that decision. (*Id.*, Ex. U at 7.)

1    First, the Court reviews the state courts' factual finding that trial counsel made a

2    strategic decision and assesses whether that finding was objectively unreasonable. *See Wood*

3    *v. Allen*, 130 S. Ct. 841, 849 (2010) (citing 28 U.S.C. § 2254(d)(2)). The only record

4    evidence on point is the affidavit of counsel attesting that he made a strategic decision to

5    defend based on third-party culpability. As set forth in the affidavit, counsel has extensive

6    experience trying serious felonies. Robles has not argued nor submitted evidence countering

7    counsel's averment that he consulted with Robles in selecting the defense. The evidence

8    supports the state courts' finding that counsel made a strategic decision about the defense to

9    pursue at trial.

10    Next, the Court must review the objective reasonableness of the state courts' ruling

11    that counsel's strategic decision fell within reasonable professional judgment under

12    *Strickland. See id.* at 850-51 & n.3. Robles has presented no evidence that counsel's decision

13    was unreasonable, no opinion from another attorney, no prevailing norms from attorney

14    guidelines, and no evidence from himself regarding the strategy. *See Matylinsky v. Budge*,

15    577 F.3d 1083, 1092 (9th Cir. 2009) (finding that defendant presented no evidence of

16    unreasonableness that could satisfy "heavy burden" of proving that trial strategy was

17    deficient). At the close of evidence, when counsel and the court were discussing jury

18    instructions, counsel represented that Robles did not want any instructions on lesser included

19    offenses; Robles wanted only a first degree murder instruction. (RT 12/16/05 at 122, 126.)

20    Ultimately, the Court determined there should be a second degree instruction but that there

21    was no evidence presented at trial of a reckless state of mind and there would be no

22    instructions on crimes requiring only a reckless *mens rea*. (*Id.* at 125, 129.) In light of the

23    trial court's finding, and Robles's request at the time of trial, it was reasonable for counsel

24    not to argue recklessness and to rely solely on misidentification as a defense. The state

25    courts' denial of this claim was not an objectively unreasonable application of *Strickland*.

26

27

28

1    Claim 3(d)

2         Petitioner argues counsel erred in defining first degree murder to the jury. During

3    preliminary instructions, the judge told the jurors that the instructions he provided them,

4    preliminary and closing, provided the law they had to follow when deciding the verdict. (RT

5    12/14/05 at 7.) At the close of evidence, the court instructed the jury on the elements of first

6    degree murder, including premeditation, and on the crime of second degree murder. (RT

7    12/20/05 at 8-9.) The prosecutor accurately described the elements of first and second degree

8    murder, including the presence or absence of premeditation, during closing arguments. (*Id.*

9    at 22-23.) Defense counsel then told the jury, "I am not going to talk to you about what first

10   degree murder is, or attempted first degree murder. If you think he pointed that gun and shot,

11   that is first degree murder." (*Id.* at 32.)

12        The PCR court found there was not a reasonable probability the outcome of the trial

13   would have been different absent counsel's error. (Doc. 13, Ex. S at 4.) The appellate court

14   noted that the prosecutor accurately explained first-degree murder during his closing

15   argument and the judge provided jury instructions on the elements. (*Id.*, Ex. U at 7-8.) The

16   court affirmed the PCR court's finding that there was not a reasonable probability of a

17   different outcome absent the error. (*Id.* at 8.)

18        The jurors were instructed that they were to follow the law provided by the judge and

19   the judge provided accurate instructions on first and second degree murder. Courts presume

20   that jurors pay close attention to the language of the court's instructions and endeavor to

21   follow them. *Francis*, 471 U.S. at 324 n.9; *see Weeks*, 538 U.S. at 234. Arguments of counsel

22   are not binding and carry less weight than the court's governing instructions. *Ho v. Carey*,

23   332 F.3d 587, 594-95 (9th Cir. 2003). Because the jury was provided accurate instructions

24   from the trial court, that they were obligated to follow, the Court finds there is not a

25   reasonable probability that the outcome would have been different absent counsel's error.

26   The state court's denial of this claim was not an unreasonable application of *Strickland*.

27

28                                              - 9 -

1      **IAC at sentencing, Claim 1**

2          Petitioner argues counsel was ineffective in failing to present mitigating evidence at

3  sentencing. Trial counsel submitted an affidavit for the PCR proceeding, in which he stated

4  that he did not seek a mitigation hearing because he was concerned that the State would

5  present aggravation evidence from another criminal case that had been brought against

6  Robles. (Doc. 19-1- at 2.) The indictment in the other case had been dismissed without

7  prejudice but counsel averred that Robles was still a suspect and faced jeopardy for those

8  offenses. (*Id.*) The PCR court found that counsel's tactical decision was reasonable and his

9  performance was not deficient. (Doc. 13, Ex. S at 3.) The appellate court affirmed the finding

10 that counsel's decision was tactical and not unreasonable. (*Id.*, Ex. U at 3.)

11         The Court first finds that the state courts' factual finding – that trial counsel made a

12 strategic decision – was not objectively unreasonable. *See Wood*, 130 S. Ct. at 849. Counsel

13 explained his considerations in not seeking a mitigation hearing. It was a tactical choice to

14 avoid opening the door to additional aggravation.

15         Next, the Court must review the objective reasonableness of the state courts' ruling

16 that counsel's strategic decision fell within reasonable professional judgment under

17 *Strickland*. *See id.* at 850-51 & n.3. Robles's argument is that counsel failed to put on

18 available mitigation. The potential mitigation is that Petitioner had a difficult childhood and

19 joined a gang, used drugs, dropped out of school and (at 18) suffered from untreated

20 depression. (Doc. 13, Ex. P at 5-8.) He regretted joining a gang and dropping out of school,

21 and he obtained his GED and a masonry certificate while in prison from ages 18 to 27. (*Id.*

22 at 5, 6.) Arizona courts find childhood experiences less weighty when the defendant is long

23 past that age. *See State v. Ellison*, 213 Ariz. 116, 144, 140 P.3d 899, 927 (2006) (finding

24 childhood experiences of little mitigating value for murders committed at thirty-three where

25 there was no evidence defendant could not tell right from wrong); *State v. Hampton*, 213

26 Ariz. 167, 185, 140 P.3d 950, 968 (2006) (finding horrendous childhood less weighty, in

27 part, because defendant was thirty at the time of the crime).

28                                    - 10 -

None of the mitigation presented is extremely weighty. In contrast, the sentencing court had before it Petitioner's prior criminal history and the fact that he was absconded from parole at the time he committed these crimes. It was reasonable for counsel to determine that the available mitigation was not worth opening the door to the State presenting evidence of additional adult criminal conduct by Petitioner. The state courts' determination that counsel conduct fell within professional norms was not objectively unreasonable.

**IAC at sentencing, Claim 2**

Petitioner argues counsel was ineffective in advising Robles that an allocution statement could be used against him on appeal. He argues that if he knew it would not have been held against him he would have expressed his remorse for the victim's death and given condolences to the victim's family, as well as providing the court more information about his background and character. In his affidavit, counsel averred that he advised Robles not to make a statement because he wanted to appeal the case and still faced jeopardy in this case and in the other case that had been dismissed without prejudice. (Doc. 19-1 at 2.) The PCR court concluded that counsel's affidavit contained a reasonable explanation and his performance was not deficient. (Doc. 13, Ex. S at 3.) The court of appeals affirmed, finding that counsel's decision was tactical and reasonable. (*Id.*, Ex. U at 3.)

First, Petitioner misunderstands the law underlying this claim. While statements made by a defendant for preparation of a presentence report cannot be used against him there is no such exception for statements made in open court at sentencing. *See* Ariz. R. Crim. P. 26.6(d)(2). Thus, counsel did not provide him erroneous advice on this point. The state courts' determination that counsel's performance was reasonable was not objectively unreasonable under *Strickland*.

**Claim 4**

Petitioner argues that the pretrial witness identification by Juan "Chico" Escalante was impermissibly suggestive in violation of his right to due process. According to Petitioner, Escalante was interviewed approximately 5 to 6 hours after the shooting and stated that

1   Robles was the shooter. Escalante stated that he had known Robles for a period of time but
2   provided no description of him nor any physical description of the shooter. During the
3   interview, Escalante was shown one photo of Robles and identified him as the shooter.

4          The trial court held a hearing regarding Escalante's pretrial identification of Robles.
5   (RT 11/28/05.) Escalante testified that he was present some time after 2 a.m. on January 1,
6   2005, when Santiago Alvarez was shot. (*Id.* at 3, 6-7, 9-10.) He stated that he had not
7   consumed any alcohol or drugs that night. (*Id.* at 7.) He was looking at Alvarez with good
8   visibility from approximately eight feet away when Alvarez was shot. (*Id.* at 14-15.)
9   Escalante testified that he saw Alvarez get shot in the back of the head and saw the person
10  holding the gun. (*Id.* at 15-16.) He stated that he recognized the shooter as Carlos Robles. (*Id.*
11  at 17.) After the shooting, he looked at Robles and said, "why did you have to do that. I know
12  you, I told him." (*Id.* at 35.) Robles then pointed the gun at him. (*Id.* at 36.)

13         When he was younger, around 12, Escalante and Robles were friends and would
14  skateboard and ride bikes together. (*Id.* at 25-26.) That ended around the age of 14 (he was
15  29 at the time of the hearing). (*Id.* at 18, 26, 32.) He stated that Robles had been incarcerated
16  for a long period of time. (*Id.* at 26-27.) Robles's older brother Julian had died approximately
17  a month before the shooting and, just after he died, Escalante had seen Robles passing by his
18  house. (*Id.* at 27-29.) Escalante testified that the night of the shooting Robles was wearing
19  a black sweater with a hood and shorts. (*Id.* at 19.) He also stated the shooter had a mustache
20  and goatee. (*Id.* at 20-21.) The morning of the shooting, police showed him one photograph
21  and asked him if he recognized the person; he was not shown a group of pictures and asked
22  to select the shooter. (*Id.* at 3, 23.) He identified the picture he was shown by the police,
23  stating that it was Carlos Robles. (*Id.* at 21-22.) The photograph had Robles's name on it,
24  however, Escalante testified that the police had folded the writing so he could not see the
25  name. (*Id.* at 22, 37.) He was positive the person in the picture shot Alvarez. (*Id.* at 37-38.)

26         The trial court denied the motion to suppress Escalante's pretrial identification,
27  finding that it was reliable although the procedure was inherently suggestive. (Doc. 13, Ex.

28                                            - 12 -

A at 4.) In support of its decision, the Court noted that Escalante knew the defendant by name, named his brother and was aware the defendant had been incarcerated. (*Id.*) Further, Escalante had ample opportunity to view the defendant at the time of the shooting. (*Id.*) The court of appeals concluded that, although showing Escalante one photo was inherently suggestive, Escalante's identification of Robles was sufficiently reliable. (*Id.* at 6.) In support of its ruling, the Court stated that Escalante knew Robles personally, thus his failure to provide a description of the shooter before viewing the photograph did not render it unreliable. (*Id.* at 5.) Further, after the shooting Escalante called out Robles's name and Robles aimed his gun at him, thus, he had opportunity to observe Robles. (*Id.* at 5-6.)

Evaluating whether an identification has been irreparably tainted by a suggestive procedure requires a two-part analysis. First, the Court must determine whether the challenged procedure was suggestive. *Neil v. Biggers*, 409 U.S. 188, 381 (1972). "An identification procedure is suggestive when it 'emphasize[s] the focus upon a single individual' thereby increasing the likelihood of misidentification." *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998) (quoting *United States v. Bagley*, 772 F.2d 482, 493 (9th Cir. 1985)). As found by the appellate court, the procedure used with Escalante was suggestive.

Second, if the process was suggestive, the Court must examine the totality of the circumstances to determine whether the witness's identification is nonetheless reliable. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). The factors to be considered in assessing reliability are:  (1) the witness's opportunity to view the accused at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the description, (4) the witness's level of certainty, and (5) the length of time between the crime and the confrontation.  *Id.* (citing *Biggers*, 409 U.S. at 199-200). The ultimate question is whether, in light of all the circumstances, the identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).

Escalante had a good opportunity to view the accused at the time of the shooting, he was standing near by and after the shooting he spoke to the shooter. His degree of attention was elevated because he witnessed the shooting of Alvarez and the weapon was then turned on him. There is no evidence that Escalante provided a description of the shooter before identifying him in the single photograph he was shown. Escalante expressed certainty about his identification of Robles. Finally, he identified Robles within a matter of hours after the shooting.

Petitioner disputes the reliability because Escalante did not come forward with the identification. Regardless, Escalante provided the identification the same morning that the shooting occurred; thus, little time had passed. Petitioner also argues that Escalante provided no physical description of the shooter, therefore, there is no way to know if that person was Robles prior to the police providing Escalante a photo of Robles. The uncontradicted testimony is that Escalante knew Robles and they had been friends as adolescents. Escalante was not being asked to identify someone unknown to him. Rather, the photograph was used to confirm that Escalante and the police were talking about the same person. In light of these facts, looking at a totality of the circumstances, there was not a very substantial likelihood that the identification procedure led to irreparable misidentification. The appellate court's denial of this claim was not an objectively unreasonable application of clearly established federal law.

**Claim 5**

Petitioner alleges there was insufficient evidence to support his conviction. Specifically he argues there was no physical evidence connecting him to the crimes, just the following contradictory witness testimony. Witness Michelle Varela testified that the gun was put to the right side of the victim's head and that the shooter was wearing a hat. The evidence demonstrated that the victim was shot with the gun away from the head on the left side. Witness Juan Escalante stated that the shooter was not wearing a hat. Further, Escalante believed Robles was trying to kill him based only on the fact that Robles pointed a gun at

1   him and he heard a click. The Arizona Court of Appeals denied this claim, noting that each

2   witness was cross-examined and the jury heard the conflicting testimony,

3       On habeas review, the "rational factfinder" standard is used to determine whether

4   there is sufficient evidence to support a state court's finding of the elements of the crime. *See*

5   *Lewis v. Jeffers*, 497 U.S. 764, 781 (1990). The question is "whether, after viewing the

6   evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

7   found the essential elements of the crime beyond a reasonable doubt." *See Jackson v.*

8   *Virginia*, 443 U.S. 307, 319 (1979). A habeas court "faced with a record of historical facts

9   that supports conflicting inferences must presume – even if it does not affirmatively appear

10  in the record – that the trier of fact resolved any such conflicts in favor of the prosecution and

11  must defer to that resolution." *Id.* at 326; *see also Bruce v. Terhune*, 376 F.3d 950, 957 (9th

12  Cir. 2004) (per curiam). This type of claim is properly analyzed under the deferential

13  standard of § 2254(d)(1); thus, the Court asks whether it was an objectively unreasonable

14  application of *Jackson* for the Arizona Court of Appeals to deny this claim. *See Sarausad v.*

15  *Porter*, 479 F.3d 671, 677-78 (9th Cir.), *vacated in part on other grounds*, 503 F.3d 822 (9th

16  Cir. 2007).

17      After reviewing the entirety of the trial transcripts and viewing the evidence in the

18  light most favorable to the prosecution, the Court concludes the appellate court adequately

19  summarized the critical evidence presented at trial:

20      Shortly after midnight, Santiago A. was engaged in a physical altercation with
    various other individuals. During the struggle, Robles fatally shot Santiago in
21  the head. A witness, Juan E., heard the shot, saw Santiago fall to the ground
    and saw Robles standing by Santiago with a gun. Juan called out, "I know who
22  you are, Carlos Robles." Robles then pointed his gun at Juan and attempted to
    fire it. The gun apparently jammed, and Juan escaped uninjured. Two other
23  witnesses, Michelle V. and Matthew S., also testified at trial that Robles had
    shot Santiago.
24

25  (Doc. 13, Ex. A at 3.) As Petitioner contends, the witnesses' statements were not entirely

26  consistent and a reasonable person could question their credibility. But that is not the relevant

27  question on habeas review. Based on the evidence presented, a rational juror could have

28      - 15 -

1  found Robles guilty beyond a reasonable doubt of first degree murder and attempted first

2  degree murder. It was not objectively unreasonable for the court of appeals to deny this

3  claim.

4  ## RECOMMENDATION

5  Claims 1 to 5 fail on the merits. Based on the foregoing, the Magistrate Judge

6  recommends that the District Court DISMISS the Amended Petition for Writ of Habeas

7  Corpus (Doc. 6).

8  Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file

9  written objections within fourteen days of being served with a copy of the Report and

10  Recommendation. A party may respond to the other party's objections within fourteen days.

11  No reply brief shall be filed on objections unless leave is granted by the district court. If

12  objections are not timely filed, they may be deemed waived. If objections are filed, the

13  parties should use the following case number: **CV 11-668-TUC-FRZ**.

14  DATED this 10th day of April, 2013.

D. Thomas Ferraro
United States Magistrate Judge